UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**ANHEUSER-BUSCH, LLC,**

    Plaintiff,

    v.                                                   Case No.: 2:16-CV-1090
                                                       JUDGE SMITH
                                                       Magistrate Judge Vascura

**ATLAS INDUSTRIAL HOLDINGS, LLC,**

    Defendant.

## OPINION AND ORDER

This matter is before the Court upon Plaintiff Anheuser-Busch, LLC's Motion to Dismiss Defendant Atlas Industrial Holdings, LLC's Counterclaim (Doc. 18). Defendant opposed Plaintiff's Motion (Doc. 24) and Plaintiff replied in support (Doc. 26). This matter is now ripe for review. For the following reasons, Defendant's Motion is **DENIED in part** and **GRANTED in part**.

### I.     BACKGROUND

This lawsuit arises out of work Atlas Industrial Holdings, LLC ("Atlas") performed at an Anheuser-Busch, LLC ("Anheuser-Busch") brewery in Columbus. The parties contracted for the work under a document called the "Master Project Agreement." (*See* Doc. 1-1, Master Project Agreement). Atlas agreed with Anheuser-Busch to remove rusted angle iron and obsolete brackets from a can pasteurizer. (Doc. 1, Compl. at ¶¶ 19–20). Unfortunately, while Atlas was performing the contractually agreed-upon work, Anheuser-Busch alleges an Atlas employee negligently used an acetylene torch and started a fire, causing damage to the brewery building and the products and materials in the building. (*Id.* at ¶¶ 2, 27, 34). Ultimately, Anheuser-Busch

submitted a claim to its insurance company, Lexington Insurance Company, but Lexington's coverage decision is not available to this Court.

Anheuser-Busch's lawsuit seeks damages against Atlas for its allegedly negligent actions and for breach of contract. Atlas's counterclaim asks for declaratory judgment against Anheuser-Busch, alleging that Anheuser-Busch was contractually responsible for "procur[ing] a separate All Risk Bui[l]der's Risk policy or (2) rely[ing] on its existing all-risk property insurance policy." (Doc. 8, Answer and Countercl. at ¶ 75). Accordingly, Atlas asks the Court to affirmatively rule that Anheuser-Busch is liable for some or all of the damages suffered because Anheuser-Busch either failed to obtain an adequate insurance policy or that Anheuser-Busch's insurance policy with Lexington Insurance is responsible for the payment of damages arising from the fire. Anheuser-Busch now moves to dismiss Atlas' Counterclaim because Anheuser-Busch alleges the Counterclaim is not yet ripe and because Anheuser-Busch alleges the Master Project Agreement did not require Anheuser-Busch to obtain insurance for the work Atlas performed.

## II. STANDARD OF REVIEW

Anheuser-Busch brings this motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, alleging that Atlas failed to state a claim upon which relief can be granted.

Under the Federal Rules, any pleading that states a claim for relief must contain a "short and plain statement of the claim" showing that the pleader is entitled to such relief. Fed. R. Civ. P. 8(a)(2). To meet this standard, a party must allege sufficient facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). A claim will be considered "plausible on its face" when a plaintiff sets forth "factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Rule 12(b)(6) allows parties to challenge the sufficiency of a complaint under the foregoing standards. In considering whether a complaint fails to state a claim upon which relief can be granted, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC*, 700 F.3d 829, 835 (6th Cir. 2012) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663. Thus, while a court is to afford plaintiff every inference, the pleading must still contain facts sufficient to "provide a plausible basis for the claims in the complaint"; a recitation of facts intimating the "mere possibility of misconduct" will not suffice. *Flex Homes, Inc. v. Ritz-Craft Corp of Mich., Inc.*, 491 F. App'x 628, 632 (6th Cir. 2012); *Iqbal*, 556 U.S. at 679.

### III. DISCUSSION

The Master Project Agreement has a section called "Builder's Risk Property Insurance" which Atlas alleges required Anheuser-Busch to obtain adequate insurance coverage for the damage caused in this case. Anheuser-Busch argues that the Builder's Risk Coverage provision in the Master Project Agreement does not apply here and thus, Atlas's counterclaim has no merit. Anheuser-Busch further argues that it did get the coverage required by the Master Project Agreement and that the counterclaim is not ripe.

The Court will address each of Anheuser-Busch's arguments in turn.

### A. Builder's Risk Insurance

Anheuser-Busch's arguments regarding the coverage of the Master Project Agreement require the Court to interpret the Master Project Agreement. "[A] federal court exercising diversity jurisdiction must apply the choice-of-law rules of the state in which it sits." *Miami Valley Mobile Health Servs., Inc. v. ExamOne Worldwide, Inc.*, 852 F. Supp. 2d 925, 931–32 (S.D. Ohio 2012) (Rice, J.) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). "Under Ohio law, contractual choice-of-law provisions are valid and enforceable." *Id.* (citing *Schulke Radio Prod. Ltd. v. Midwestern Broad. Co.*, 6 Ohio St.3d 436, 438–39, 453 N.E.2d 683, 686 (Ohio 1983)). The Master Project Agreement clearly states that "the construction and interpretation of the Contract Documents shall be under and in accordance with the laws of the State of Missouri." (Doc. 1-1, Master Project Agreement at 22, § 1.47). Accordingly, the Court will apply Missouri contract law where necessary to analyze the contract provisions. Under Missouri law, disputes over contract language are determined "by looking at the words of the contract and giving those words their plain, ordinary, and usual meaning." *Ethridge v. TierOne Bank*, 226 S.W.3d 127, 131 (Mo. 2007) (citing *State ex rel. Vincent v. Schneider*, 194 S.W.3d 853, 859–860 (Mo. 2006)). Unless the terms are "susceptible to honest and fair differences," the intent of the parties is based on the contract alone. *Id.* (citations omitted).

The Builder's Risk Insurance Provision at issue provides:

1. Owner shall purchase and maintain, at its own expense, "All Risk Builder's Risk" Insurance. Such insurance shall cover at Owner's job site, including setup, assembly and delivery areas, the following:

    i. Direct damage to that part of any structure which Contractor will construct or alter as part of the Work (including temporary structures), and on all machinery, equipment, materials and supplies that are to be installed as part of the Work . . .

4

      ii. Direct damage to machinery, equipment, materials and supplies that are to be installed as part of the Work and that are stored on Owner's property, whether at the specific job site or at other designated setup, assembly and/or storage areas.

2. Contractor shall be responsible for the first $5,000 of each loss or damage to the Work that Contractor causes or to which it contributes, and in any claim Contractor asserts under Owner's policy.

. . .

c. Conditions Applicable Both to Owner and to Contractor:

1. The interests of Owner, Contractor and Subcontractors shall be insured jointly under all policies of insurance required in this section. The responsible party shall instruct its insurer to name the other party as an additional insured, and upon request shall certify that such insurance is in effect.

. . .

3. All Builder's Risk insurance and Contractor's equipment insurance policies which apply to any property at the job site shall provide a waiver of subrogation rights against Owner, Contractor and Subcontractors. "Job site" for the purpose of this paragraph specifically excludes any existing facility of Owner which is not the subject of the Work.

(Doc. 1-1, Master Project Agreement at 21–22, § 1.44).

Atlas contends that the provisions quoted above clearly cover the work Atlas performed because "[i]t is an inescapable conclusion that damage to at least the pasteurizer was contemplated by the requirement of alteration to at least the pasteurizer, and since the pasteurizer was a fixture, damage was legally contemplated to not only the pasteurizer, but also to the building to which the pasteurizer was affixed." (Doc. 24, Mem. Opp. at 14). Anheuser-Busch argues that this section does not apply because Atlas did not construct or alter the angle iron or brackets it was contracted to remove. Anheuser-Busch further argues that the direct damage to the parts in this case would be the rusted angle iron and brackets, not the pasteurizer or building in which the pasteurizer sat and that the pasteurizer was not a fixture, but rather property within the larger building.

5

The primary issue in this case is whether the All Risk Builder's Risk Insurance Anheuser-Busch had to purchase covered the damage caused by Atlas. The specific language is that the All Risk Builder's Insurance must be purchased to cover "[d]irect damage to that part of any structure which Contractor will construct or alter as part of the Work (including temporary structures), and on all machinery, equipment, materials and supplies that are to be installed as part of the Work." Simply put, Anheuser-Busch was contractually obligated to provide All Risk Builder's Risk Insurance to cover direct damage to the parts of structures Atlas was altering. The extent of the coverage and whether Atlas's work was an alteration are in dispute.

### 1. Atlas' Work was an Alteration

Anheuser-Busch argues that Atlas was not altering any structure because Atlas was simply removing the rusted iron and the brackets. However, even using Anheuser-Busch's definition of "alter" as "to make different in some particular, as size, style, course, or the like; modify," Atlas's work is plainly an alteration to the part of the pasteurizer to which the brackets and angle iron were attached. (Doc. 26, Reply at 4 (quoting *Random House Webster's Unabridged Dictionary* 60, 1639 (2d ed. 2001)). Removal of pieces from the pasteurizer constitutes an alteration to the pasteurizer because Atlas' work involved modifying pieces that were connected to the pasteurizer, thereby modifying at least the part of the pasteurizer to which the brackets and iron were connected. The removal of obsolete parts may be considered relatively minor, but the contract language does not require a material or substantial alteration, only that the structure be altered. Accordingly, the Court finds that Atlas has sufficiently alleged that its work was alteration such that § 1.44 of the Master Project Agreement applies.

## 2. The Master Project Agreement Limits the Scope of Coverage

Although the Court agrees with Atlas that the work performed was an alteration such that Anheuser-Busch was required to obtain coverage, there is still a question as to the scope of the damage covered by § 1.44. The Master Project Agreement specifically states that the insurance shall cover "**direct damage** to **that part** of the structure" Atlas was altering. (Doc. 1-1, Master Project Agreement at 21, § 1.44.1.i (emphasis added)). Anheuser-Busch argues that the scope of the damage covered is limited to the angle iron and brackets that were removed during the course of the work while Atlas contends that the scope of the damage covered is the entirety of the damage incurred by Anheuser-Busch. The reality is that the Master Project Agreement sets the scope somewhere in between these two extremes.

The Counterclaim specifically states that work was removing rusted angle iron bracing and obsolete brackets from the side of the Can Line 55 pasteurizer. (Doc. 8, Answer and Countercl. at ¶ 2). Atlas describes the pasteurizer as "a big metal box that is about sixteen feet wide, about twenty feet high, and about one hundred feet long." (*Id.* at ¶ 14). The plain reading of the Master Project Agreement is that "that part of the structure" contemplated something beyond just the brackets and angle iron when Atlas agreed to remove those pieces from the pasteurizer. Removal of items contemplates removal from some other object, the pasteurizer in this case. Thus, at least some element of the pasteurizer was altered when items were removed from it. Accordingly, the Court disagrees with Anheuser-Busch's contention that insurance coverage was only required for the brackets and angle iron.

The Court also disagrees with Atlas' contention that the Master Project Agreement required coverage for the entire building. Atlas claims in its opposition that the Pasteurizer is a fixture but never alleges that the pasteurizer was a fixture in the Counterclaim. (Doc. 8, Answer

7

and Countercl. at ¶ 14). Atlas provides no other facts or argument that the description and size of a big metal box should lead to the inference that the pasteurizer was a fixture, such that it became a part of the structure of the building. However, even if the pasteurizer was a fixture and was part of the overall building structure, the Master Project Agreement still limits coverage to "direct damage to that part of the structure," meaning that, at a maximum, damage to the building beyond the pasteurizer is not covered by in § 1.44 of the Master Project Agreement. Further, any damage to the building is not direct damage as set forth in the Master Project Agreement, but damage which is derivative of the damage caused to the portions Atlas was altering. Accordingly, the Court finds that § 1.44 only applies to the part which Atlas was altering. The Court finds that the terms, "that part" and "direct damage" refer to something beyond merely the angle iron and obsolete brackets but not to damage beyond the pasteurizer. "Direct damage to that part of the structure" may also refer to some limited part of the pasteurizer. However, there are no other arguments regarding the meanings of "that part" or "direct damage" and therefore, the Court makes no further findings as to the scope of the provision at this stage.

**B.     Ripeness**

Anheuser-Busch next argues that Atlas' Counterclaim is premature because there has been no coverage determination by Lexington and because no party has asserted a right of subrogation against Atlas. Atlas argues that the Counterclaim is ripe because Anheuser-Busch breached the Master Project Agreement by suing Atlas. Anheuser-Busch did not respond to this claim. The Court agrees with Atlas that this claim is ripe because it seeks a declaratory judgment concerning the rights and relationships between the parties under the Master Project Agreement, regardless of the outcome of the coverage determination by Lexington. Atlas' Counterclaim essentially asks the Court to declare that Anheuser-Busch was required to purchase insurance for

8

the injury that occurred in this case. That claim is ripe because the Court can still declare the rights of each party under the Master Project Agreement before or after the coverage determination.

## IV. CONCLUSION

Based on the foregoing, Anheuser-Busch's Motion to Dismiss the Counterclaim is **DENIED in part** as to the legal basis for the claim and **GRANTED in part** as to the scope of the claim as outlined above. The Clerk shall **REMOVE** Document 18 from the Court's pending motions list.

**IT IS SO ORDERED.**

                                               */s/ George C. Smith*
                                               **GEORGE C. SMITH, JUDGE**
                                               **UNITED STATES DISTRICT COURT**